[606 NYS2d 933]

In the Matter of ROBERT F. HAHN, an Attorney, Respondent. GRIEVANCE COMMITTEE OF THE EIGHTH JUDICIAL DISTRICT, Petitioner.

Fourth Department, December 29, 1993

**APPEARANCES OF COUNSEL**

*Daniel Drake,* Rochester, for petitioner.

*Herbert L. Greenman,* Buffalo, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to practice by this Court on February 12, 1980, and currently maintains an office for the

practice of law in Buffalo, New York. The Grievance Committee filed a petition containing seven charges alleging multiple violations of the Code of Professional Responsibility. Inasmuch as respondent's answer denied material allegations in the petition, a Referee was appointed to conduct a trial on the issues of fact raised by the pleadings. The Referee filed a report, which petitioner now moves to confirm in part and disaffirm in part.

Initially, we note that the Referee was appointed to make findings of fact only. The Referee has also made findings concerning whether respondent's conduct violated Disciplinary Rules and we treat those findings as advisory.

### CHARGE I

In January 1987, respondent formed a partnership with two individuals for the purpose of buying, rehabilitating and selling a townhouse project. Two of the partners loaned the partnership $9,000, which respondent deposited in his trust account. Respondent issued a check for $1,970 from that account in partial payment for a swimming pool at his residence. He also wrote two checks for $4,875 and $3,500 payable to a bank in connection with a mortgage application on behalf of the partnership. The net effect of those transactions was to create a negative balance in the escrow account of $1,622. Respondent alleged that the check for $1,970 represented a loan from the partnership. He also contended that the deficiency in his escrow account was caused by the bank's failure to hold the check for $4,875 until the mortgage application was approved. The Grievance Committee charged respondent with commingling and conversion of client funds in violation of the Code of Professional Responsibility former DR 9-102 (A) and (B), and 22 NYCRR former 1022.5 (a) and (b). However, those provisions relate to preserving funds and property of clients. Here, the funds deposited into respondent's escrow account were not client funds but funds of a partnership of which respondent was a partner. Accordingly, we dismiss that portion of the first charge. For the same reason, we dismiss the charge relating to the loan by Betty Wolodka to respondent's business, Majestic Home Builders.

We find, however, that respondent is guilty of converting that portion of $17,791.14 representing the proceeds of a client's real estate transaction when he deposited those funds into his trust account, which, at the time, had a negative

balance of $1,622. Therefore, except as stated above, we confirm the findings of fact contained in the Referee's report with respect to this charge.

Accordingly, we conclude that respondent is guilty of commingling and converting client's funds and failing to preserve and maintain client funds in an identifiable bank account, in violation of former DR 9-102 (A) and (B), and 22 NYCRR former 1022.5 (a) and (b).

### CHARGE II

With respect to the second charge, we find that respondent knowingly created a fictitious person known as "James Brady" to conduct business under the name of "Majestic Home Builders" and that he used that name in connection with the construction and sale of a dwelling in order to conceal his involvement. We also find that, in furtherance of that scheme, he used his brother's address in Florida, and later his office address, as the address for "James Brady", that he prepared a business certificate for "Majestic Home Builders" to be signed by "James Brady", and that he presented the certificate to a third party who signed the name "James Brady". Respondent then notarized the certificate. He also caused a deed to be recorded transferring title to property from a corporation to "James Brady doing business as Majestic Home Builders", and thereafter prepared a deed conveying the property from "James Brady d/b/a Majestic Home Builders" to two individuals. Respondent admitted that he acted as a notary on the deed and that he attested that "James Brady" appeared before him. Respondent also prepared an affidavit representing that he was the attorney for "James Brady" and that there were no judgments against him. The affidavit also indicated that "James Brady" was the owner of certain property and that he resided at a Florida address that, in reality, was the address of respondent's brother. Respondent opened a checking account in the name of "James Brady d/b/a Majestic Home Builders" indicating the address of respondent's law office as "James Brady's" address. Respondent used a rubber stamp to affix the name "James Brady" on the card. Respondent's most egregious act in this scenario was to use the Social Security number of a neighbor and former client as "James Brady's" Social Security number on the bank account. Respondent stated that he wanted the bank to send notices to his former client because he was angry with him.

We disaffirm the finding by the Referee that the evidence does not support a finding that respondent knew that "James Brady" was a fictitious person, and conclude that respondent knowingly created this fictitious person for the purpose of concealing respondent's involvement with the real estate project. Although the Referee found that no personal or economic injury resulted from use of the fictitious name, the finding of such injury is unnecessary to sustain a finding of misconduct. The evidence shows that respondent engaged in the conduct described above with the intention to conceal his involvement in Majestic Home Builders and to deceive the bank. We also disagree with the Referee's conclusion that respondent's misuse of his notary stamp is a matter for the Secretary of State, rather than for this Court. By falsely swearing that "James Brady" appeared before him, respondent committed a misdemeanor (Executive Law § 135-a).

Accordingly, we conclude that respondent is guilty of conduct involving dishonesty, deceit, fraud and misrepresentation, conduct that is prejudicial to the administration of justice and adversely reflects on his fitness to practice law, all in violation of former DR 1-102 (A) (4) through (6).

### CHARGE III

The Referee found that respondent filed an affidavit in a matrimonial action stating that respondent's client, John Tripi, had no legal interest in a corporation known as the Carole Building Corporation, and was not an officer or director therein when, in fact, Tripi was the beneficial owner of the corporation and respondent held 20 shares of stock in trust for him. Later, in a deposition, respondent testified that Tripi was the beneficial owner of the corporation. Thereafter, respondent was discharged by Tripi, who commenced a replevin action to recover corporate books and documents. Respondent filed an affidavit in that action indicating that he was the sole stockholder, officer and director of the corporation and did not indicate that he held the stock in trust for his former client. After Tripi died, respondent alleged that Tripi had orally agreed that respondent was to become the beneficial owner of the corporation on the client's death. Although the Referee found that statement by respondent to be credible, we do not. Respondent also mailed a letter to officials in Grand Island stating that he was the sole shareholder in the corporation without indicating that Tripi's heirs were the beneficial own-

ers. Additionally, he deeded property belonging to the corporation to himself. We find that respondent's failure to disclose his beneficial ownership in the corporation was deliberate and designed to deceive the court and others concerning the beneficial interest of his client and his heirs. Further, his conveyance to himself of property owned by the corporation was a conversion. To the extent that the Referee's report makes findings of fact contrary to the findings by this Court, it is disaffirmed.

Accordingly, we conclude that respondent is guilty of conduct involving dishonesty, deceit, and misrepresentation in violation of former DR 1-102 (A) (4), conduct adversely reflecting on his fitness to practice law in violation of former DR 1-102 (A) (6), and accepting employment when his professional judgment is affected by his own financial, business and personal interests in violation of former DR 5-101 (A).

### CHARGE IV

We confirm the findings of fact of the Referee with respect to the fourth charge and conclude that respondent did not violate the Code of Professional Responsibility with respect to that charge.

### CHARGE V

On December 8, 1987, respondent agreed to loan $5,500 for 90 days to Michael Karbowski, who agreed to repay him $6,500 at the end of the loan period. Respondent issued a check to Karbowski for $5,500 from his escrow account and obtained Karbowski's signature on a confession of judgment for $6,500. After Karbowski signed the confession of judgment, respondent inserted thereon the name of the Carole Building Corporation as plaintiff. Karbowski defaulted on the loan and respondent filed an affidavit of confession of judgment, together with the judgment for $7,887.50 in the Niagara County Clerk's office. When Karbowski's attorney advised respondent that the loan appeared to be usurious, respondent filed a purported "amended confession of judgment" in the name of the corporation for $6,722.50. Respondent collected the judgment and used a portion of the proceeds to make payments to his VISA account. He also deposited $5,000 in his escrow account and used it to satisfy his obligation to another client. On October 22, 1990, he paid the corporation $6,802.58, which purportedly represented the proceeds from the collection of

the judgment against Karbowski. During the Grievance Committee's investigation, respondent asserted that the Karbowski loan was made on behalf of John Tripi, the beneficial owner of the Carole Building Corporation, with funds on deposit in respondent's escrow account that belonged to the corporation. He also testified before the Committee that he cashed the checks payable to the Carole Building Corporation in satisfaction of the judgment against Karbowski, placed the cash in his safe and subsequently turned the money over to the attorney representing Tripi's estate. At the time of the loan, respondent did not have $5,500 in funds belonging to either John Tripi or the Carole Corporation in his trust account. Additionally, his testimony to the Committee was false.

Accordingly, we conclude that respondent converted client funds, failed to preserve and maintain client's funds in a special account, commingled client funds with his own, failed to maintain complete records of client funds and failed to pay client funds promptly to a client, engaged in acts that adversely reflect on his fitness to practice law, and engaged in conduct involving misrepresentation, deceit and dishonesty in violation of former DR 1-102 (A) (4), DR 1-102 (A) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]), and former DR 9-102 (A) and (B), DR 9-102 (A), (B) (4); (C) (3), (4); (D) (1) and (2) (22 NYCRR 1200.46 [a], [b] [4]; [c] [3], [4]; [d] [1], [2]).

### CHARGE VI

The Referee found that, on or about February 15, 1990, respondent was retained to represent the sellers of real property located in Williamsville, New York. According to the contract of sale, the buyers paid $100 as a down payment and were to pay an additional $4,900, all of which was to be held in escrow by respondent. On March 26, 1990, respondent received $2,450 from the buyers, which he deposited into his escrow account. On May 1, 1990, respondent issued a check for $2,500 from his escrow account to pay his VISA account at M & T Bank. On May 16, 1990, respondent received from the buyers an additional $2,450, which he again deposited in his escrow account. On May 21, 1990, respondent issued a check against the escrow account for $2,500 payable to his VISA account at Key Bank of Western New York, N.A. After issuance of that check, the balance in the escrow account fell to $238.04, well below the $5,000 he received pursuant to the real estate contract. On October 2, 1990, respondent deposited

$5,000 in the escrow account when he collected on the judgment described above in the discussion regarding Charge V. The Referee found the facts as stated above, but also found that respondent asked one of the sellers if he could use the money held in escrow until the closing of the transaction and that the seller consented. Even if one of the sellers consented to respondent's use of the escrow funds, respondent violated his professional obligation by using escrow funds for his own purpose. The funds were not the property of the sellers until after the closing and, therefore, they had no authority to consent to the misappropriation.

Accordingly, we confirm the findings of fact with respect to this charge and conclude that respondent has commingled and converted funds, failed to identify and preserve client funds and engaged in conduct that adversely reflects upon his fitness to practice law, in violation of former DR 1-102 (A) (6), DR 1-102 (A) (7) (22 NYCRR 1200.3 [a] [7]) and former DR 9-102 (A) and (B), DR 9-102 (A), (B) (4); (C) (3), (4); (D) (1) and (2) (22 NYCRR 1200.46 [a], [b] [4]; [c] [3], [4]; [d] [1], [2]).

### CHARGE VII

The Referee found that respondent deposited in his escrow account $1,550 that he had received from a client in connection with a real estate transaction. Respondent used a portion of the funds to pay his VISA account. On May 10, 1990, respondent issued a check to an attorney for $1,550, which represented the funds from the real estate closing. On May 16, 1990, he deposited $902.46 in his attorney escrow account to enable the check written on May 10, 1990 to clear. We conclude that respondent is guilty of commingling and converting client funds and has engaged in conduct that adversely reflects on his fitness to practice law in violation of former DR 1-102 (A) (6) and former DR 9-102 (A) and (B).

Respondent's conduct in the convoluted schemes described above, his conversion of funds held in his trust account to satisfy his personal obligations, and his larcenous transfer of a client's real property to himself establishes a pattern of misrepresentation, dishonesty and deceit that renders him unfit to practice law. Accordingly, respondent should be disbarred.

PINE, J. P., BALIO, LAWTON, DAVIS and BOEHM, JJ., concur.

Order of disbarment entered.