**The PEOPLE of the State of Colorado, Complainant,**

**Montie L. BARRINGER, Respondent.**

**No. 99PDJ052.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 19, 2001.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members EDWIN S. KAHN and ROBERT M. MAES, both members of the bar.

### OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

The Complaint in this matter was filed on

June 2, 1999.[1] Montie L. Barringer ("Barringer") moved for an Order staying the proceedings pending resolution of a civil proceeding in Pueblo County District Court, Case No. 98CV1053, involving the allegations set forth in the Complaint. The Presiding Disciplinary Judge ("PDJ") granted Barringer's motion by Order dated August 18, 1999. The stay was then lifted on December 21, 1999, due to Barringer's failure to comply with the terms of the stay. Upon the People's motion, by Order dated March 3, 2000, default entered as to the facts set forth in the Complaint, which were deemed established. *See People v. Richards,* 748 P.2d 341, 347 (Colo.1987).

This matter was heard on March 27, 2000, before the PDJ and two hearing board members, Edwin S. Kahn and Robert M. Maes, both members of the Bar. James S. Sudler, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Barringer failed to appear in person or through counsel.

The People's exhibits 1 through 8 were admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witness Deborah Ortiz, Chief Investigator for the Office of Attorney Regulation Counsel. The PDJ and Hearing Board considered argument of counsel, the exhibits admitted, assessed the credibility of the witness, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Montie L. Barringer has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 22, 1978, and is registered upon the official records of the Court, attorney registration number 08658.

In December 1996 Gary Ciancio ("Ciancio") retained Barringer to represent him in a workers' compensation claim, a wrongful termination action, and an unlawful detainer action. Barringer had prior experience as an administrative law judge and previously presided over worker's compensation matters. On December 19, 1996, Ciancio, who has limited reading abilities, signed a fee agreement with Barringer providing for a thirty-three and one third percent contingent fee for Barringer's services regarding these three matters. At the time the fee agreement was executed, § 8–43–403, 3 C.R.S. (1993) provided that, with regard to worker's compensation matters, a contingent fee exceeding twenty percent of the amount of contested benefits was presumed unreasonable.

Barringer filed formal claims for workers' compensation on Ciancio's behalf and proceeded with the prosecution of those claims under the rules and procedures applicable to worker's compensation claims. In June 1997, while Barringer was attempting to settle the worker's compensation claims, Ciancio requested that Barringer represent him in three additional criminal and traffic matters and Barringer agreed to do so. Barringer entered his appearance on Ciancio's behalf in the three matters pending in Fremont County Court: Case No. 96T1531, a probation revocation matter, Case No. 97T606, a matter involving a charge of driving under the influence, and Case No. 97T965, a matter involving a charge of driving while under restraint.

On July 27, 1997, Barringer and Ciancio agreed that Barringer would be paid for these three additional matters out of any settlement reached on Ciancio's worker's compensation claim. Barringer quoted Ciancio an aggregate fee of $7,500 as compensation for the three new matters. As part of the fee agreement on the three new matters, Barringer required that Ciancio sign an Assignment of Proceeds and Power of Attorney (the "Assignment") which, on its face, authorized Barringer to deduct the $7,500 from any settlement Barringer obtained for Ciancio in the worker's compensation case. The Assignment also authorized Barringer to retain any sums received in settlement of the workers' compensation matters until all fees and costs were paid in the three new criminal and traffic matters.

**1.** Barringer was immediately suspended from the practice of law by the Colorado Supreme Court on May 13, 1999, for the conduct giving rise to this disciplinary matter.

In early August 1997, a settlement document was prepared and signed to resolve Ciancio's worker's compensation matter. Barringer did not communicate with Ciancio regarding the settlement; rather, without Ciancio's knowledge, authority or consent, Barringer signed Ciancio's name to the settlement document, and caused it to be filed with the Colorado Compensation Insurance Authority. Barringer also notarized the settlement document attesting to the veracity of Ciancio's signature. Shortly thereafter, in August 1997, Barringer received the settlement proceeds on Ciancio's worker's compensation claim in the amount of $15,000. He endorsed the settlement check with Ciancio's signature although he did not have the authority to do so, and deposited the funds into his trust account. Between September 1997 and October 1998, Ciancio called Barringer numerous times inquiring about the worker's compensation case and Barringer informed him that the case had not settled. Barringer intended to deceive Ciancio into believing that the case had not settled. Between August 1997 and October 1998, Barringer made no distribution of the worker's compensation settlement funds to Ciancio. By September 25, 1997, Barringer had, in fact, spent all but $233.74 of Ciancio's $15,000 settlement funds on personal and business expenses.

During the investigation of this matter, a representative of the Office of Attorney Regulation Counsel asked Barringer whether he had notarized the settlement document as a notary. Barringer admitted that he had notarized the settlement document and stated that his notary commission would not expire until June 1, 2001. In fact, Barringer's notary powers expired in 1982.

On September 22, 1997, Barringer obtained a resolution of the three newer matters pending against Ciancio: Case No. 96T1531, Case No. 97T606 and Case No. 97T965. In early 1998, Ciancio asked Barringer to represent him in two new criminal matters. Barringer entered his appearance on Ciancio's behalf in Case No. 97T1727 and Case No. 96M1015 in Fremont County Court. In October, 1998, Barringer withdrew from representing Ciancio in these two matters.

In October 1998, Ciancio contacted the Colorado Compensation Insurance Authority and learned that his worker's compensation case had settled in August 1997. He was provided with a copy of the settlement check. Ciancio confronted Barringer. Barringer told Ciancio that the funds were in his trust account when in fact they were not, tendered a check in the amount of $1,200 to Ciancio as his portion of the $15,000 worker's compensation settlement proceeds and told Ciancio that a child support lien had attached to the remaining settlement funds in his trust account. Barringer provided a "trust account summary" to Ciancio, reflecting that from the $15,000 worker's compensation settlement funds, Barringer deducted $7,500 for fees for his representation of Ciancio in Case No. 97T606, 97T965, and 97T1531, $5,000 as a contingency fee in the worker's compensation matter, $1,300 for additional unspecified attorney's fees, and a $1,200 distribution to Ciancio as his portion of the worker's compensation settlement.

Pursuant to the Agreement between Barringer and Ciancio, Barringer was required to retain any sums received in settlement of the workers' compensation matters until all fees and costs were paid" relating to the three criminal and traffic matters. Notwithstanding this requirement, Barringer spent virtually all of Ciancio's settlement funds. Even if Barringer had fully earned the $7,500 fees associated with the criminal and traffic matters and the $5,000 contingency fee in the worker's compensation matter prior to September 26, 1997, Barringer's trust account should have still retained no less than $2,500 of Ciancio's funds on that date. It did not. Barringer therefore converted at least $2,266.26 of his client's funds between August 26, 1997 and September 26, 1997.

## II. CONCLUSIONS OF LAW

■ Default entered as to the facts alleged in the Complaint, which were deemed admitted. Claim One alleges that Barringer violated C.R.C.P. ch. 23.3, The Rules of Professional Conduct ("Colo.RPC") 8.4(d)(engaging in conduct prejudicial to the administration of justice) and Colo. RPC 1.5(a)(charging an unreasonable fee). Colorado Revised Stat-

utes § 8–43–403, 3 (2000) provides in part that "[o]n unappealed contested cases, a contingent fee exceeding twenty percent of the amount of contested benefits shall be presumed to be unreasonable."[2] Barringer failed to appear at the sanctions hearing in this matter; therefore no evidence was presented to rebut the presumption that the amount Barringer charged was unreasonable. Accordingly, the PDJ and Hearing Board find that Barringer's contingency fee agreement failed to comply with the requirements of C.R.C.P. ch. 23.3 Rule 3 (contingent fee agreements may not be unreasonable), and Barringer violated Colo. RPC 1.5(a) by charging Ciancio an unreasonable fee. *See In re Wimmershoff*, 3 P.3d 417, 419 (Colo.2000)(finding that attorney charged an unreasonable fee where he charged and collected an amount in excess of twenty percent in a workers' compensation matter in violation of Colo. RPC 1.5(a)).

Claim one also alleges that Barringer violated Colo. RPC 8.4(d) "by entering into a contingent fee agreement of the type prohibited by statute." However, no evidence was presented which would establish that Barringer's misconduct, although related to a pending court proceeding, prejudicially affected, delayed, interfered with or altered the course of that proceeding or, directly or indirectly, affected the administration of justice. A violation of Colo. RPC 8.4(d), although covering a broad range of attorney misconduct, requires proof of some nexus between the conduct charged and an adverse effect upon the administration of justice. *Cf. People v. Wright*, 35 P.3d 153, (Colo. 1999), 21 Colo. Law. 154, 155 (September 1999)(finding a violation of Colo. RPC 8.4(d) for attorney's conduct which resulted in a direct disruption of pending proceedings); *People v. Mannix*, 936 P.2d 1285, 1287(Colo.1997)(finding a violation of Colo. RPC 8.4(d) where attorney failed to appear at criminal proceeding). Accordingly, the alleged violations of Colo. RPC 8.4(d) in claim one is dismissed.

Similarly, claim two alleges an additional violation of Colo. RPC 8.4(d) based on Barringer's obtaining an assignment contrary to the requirements of § 8–42–124, C.R.S.[3] Even if the manner in which Barringer obtained the assignment violated § 8–42–124, C.R.S., no evidence was presented that Barringer's conduct prejudicially affected, delayed, interfered with or altered the course of a proceeding or, directly or indirectly, affected the administration of justice. Accordingly the alleged violation of Colo. RPC 8.4(d) in claim two is dismissed.

Claim three charges Barringer with a violation of Colo. RPC 1.2(a)(a lawyer shall abide by a client's decision concerning the scope and objectives of representation), which was dismissed upon the People's motion at the sanctions hearing. Claim three also alleges a violation of Colo. RPC 1.4(b)(a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make an informed decision), a violation of Colo. RPC 8.4(b)(committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer) constituting grounds for discipline pursuant to C.R.C.P. 251.5(b), and Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, deceit, or misrepresentation).

Barringer's failing to consult with Ciancio about the workers' compensation settlement to an extent reasonably necessary for Ciancio to make an informed decision violated Colo. RPC 1.4(b).

The alleged violation of Colo. RPC 8.4(b) in claim three is based upon the following allegations:

> 15. The respondent, without Mr. Ciancio's knowledge or consent, forged Mr. Ciancio's signature to the settlement document.

> 16. The respondent also notarized the settlement document; however, he was

---

**2.** This language was identical to the statute in effect in 1996 and 1997 when the allegations giving rise to this disciplinary action occurred.

**3.** § 8–42–124(2), 3 C.R.S. (2000) states in relevant part: "[t]he power given in any power of attorney or other authority from any injured employee or the dependents of any killed employee purporting to authorize any other person to receive, be paid, or receipt for any compensation benefits awarded any such claimant shall be wholly void and illegal and of no force and effect...."

not an active notary public as his commission as a notary public expired in 1982. By signing as a notary, the respondent engaged in official misconduct and willful misrepresentation.

17. On August 12, 1997, the respondent filed the settlement documents with the Division of Colorado Compensation Insurance Authority.

20. The respondent, by signing Mr. Ciancio's signatures to the settlement agreement and settlement check without Mr. Ciancio's knowledge or authorization, engaged in the criminal act of forgery. *See* C.R.S. § 18–5–102. Additionally, by notarizing the settlement documents when he was not an active notary, the respondent engaged in the criminal acts of official misconduct and willful impersonation. *See* C.R.S. § 12–55–116 and C.R.S. § 12–5–117, respectively. This conduct constitutes a violation of C.R.C.P. 251.5(b)(commit an act or omission which violates the criminal laws) and Colo. RPC 8.4(b)(commit a criminal act which reflects adversely on the lawyer's honesty).

21. The respondent, by forging Mr. Ciancio's signature to the settlement document and by notarizing the settlement documents when he was not an active notary, also violated Colo. RPC 8.4(c)(engage in conduct involving dishonesty, fraud, deceit and misrepresentation).

Colo. RPC 8.4(b) provides that "[i]t is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The People allege first that Barringer violated Colo. RPC 8.4(b) when he "forged Mr. Ciancio's signature to the settlement document" and by "signing Mr. Ciancio's signatures to the settlement agreement and settlement check without Mr. Ciancio's knowledge or authorization," in violation of " § 18–5–102."

Colorado Revised Statutes § 18–5–102, 6 (1997) provides in relevant part:

(1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

(a) Part of an issue of money, stamps, securities, or other valuable instruments issued by a government or governmental agency; or

(c) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

■ Both the settlement check and the settlement agreement fall within the purview of § 18–5–102(1)(a) and § 18–5–102(1)(c) respectively; therefore, the statute applies to both instruments. A presumption of intent to defraud is created when the evidence shows that the person charged had knowledge that the instruments were false. *Colorado Motor Vehicle Dealer Licensing Bd. v. Northglenn Dodge, Inc.*, 972 P.2d 707, 715 (Colo.App.1998), *citing Cameron v. People*, 170 Colo. 504, 462 P.2d 606 (1969). Barringer knew at the time he executed the settlement agreement and endorsed the settlement check, which he made to appear to be Ciancio's signature, that the signatures placed on the instruments were false. Barringer did not appear at the sanctions hearing. Therefore, no evidence was presented to rebut the presumption that Barringer had the intent to defraud. The following additional facts support a finding of intent to defraud: Barringer's failing to disclose to the client for thirteen months that the case had been settled and his misrepresentation that the settlement funds were in his trust account when in fact they had almost entirely been spent on personal and business expenses. Barringer had the intent to defraud.

Barringer falsely completed both the settlement check and the settlement agreement. To "falsely complete" a document is "to transform an incomplete written instrument into a complete one by adding, inserting, or changing matter without the authority of anyone entitled to grant that authority, so that the complete written instrument falsely appears or purports to be in all respects an

authentic creation of or fully authorized by its ostensible maker." § 18–5–101(3)(a) C.R.S. 6 (2000). Barringer transformed both the settlement agreement and settlement check into complete instruments by adding Ciancio's signature to them without Ciancio's knowledge. Barringer did so in a manner that made the written instrument appear or purport to be in all respects an authentic creation of or fully authorized by the client.

Additionally, Barringer uttered both the settlement agreement and the falsely endorsed check to third parties. To utter an instrument is to assert, either directly or indirectly, that it is valid. *People v. Miralda,* 981 P.2d 676, 678 (Colo.App.1999). Hence, the presentation or delivery of a forged instrument to another is generally looked upon as the uttering of such an instrument. *Id.* See § 18–5–101(8), 6 C.R.S. (2000)(defining "utter" as "to transfer, pass, or deliver, or attempt or cause to be transferred, passed, or delivered, to another person any written instrument, article, or thing"). Where [an individual] has passed an instrument he knows to be false, the factfinder may infer an intent to defraud, particularly if the [individual] enjoyed the proceeds of the passing. *People v. Brown,* 193 Colo. 120, 562 P.2d 754, 755 (1977). In this case the intent to defraud can be inferred. Barringer committed forgery by signing Ciancio's name to the settlement document and endorsing Ciancio's name on the settlement check, constituting grounds for discipline pursuant to C.R.C.P. 251.5(b) and a violation of Colo. RPC 8.4(b). Barringer's signing the settlement document and endorsing the settlement check with Ciancio's signature and notarizing the settlement document as a notary public also violates Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, deceit, fraud, or misrepresentation).

Claim three further alleges that "by notarizing settlement documents when he was not an active notary, the respondent engaged in the criminal acts of official misconduct and willful impersonation. *See* C.R.S. § 12–55–116 and C.R.S. § 12–5–117(sic), respectively."

Colorado Revised Statutes § 12–55–116, 5 (Supp.1982) provides:

Official misconduct by a notary public liability of notary or surety. (1) A notary public who knowingly and willfully violates the duties imposed by this part 1 commits official misconduct and is guilty of a class 2 misdemeanor.

A violation of this statute requires that the individual be a "notary public" at the time the alleged misconduct occurs.[4] The undisputed facts in this case established that Barringer was not a notary public at the time he notarized the settlement agreement. Consequently, he could not have violated § 12–55–116, 5 C.R.S. (Supp.1982) and the alleged violation of Colo. RPC 8.4(b) premised upon a violation of that statute is dismissed.

Claim three also alleges that Barringer engaged in conduct which violated § 12–55–117, 5 C.R.S. (Supp.1982) as grounds for discipline pursuant to C.R.C.P. 251.5(b) and a violation of Colo. RPC 8.4(b). § 12–55–117, 5 C.R.S. (Supp.1982) provides:

Willful impersonation. Any person who acts as, or otherwise willfully impersonates, a notary public while not lawfully appointed and commissioned to perform notarial acts is guilty of a class 2 misdemeanor.

In August 1997, Barringer falsely assumed the identity of a notary, verified the settlement agreement as having been signed by Ciancio when he himself signed it, and delivered the settlement agreement to the Colorado Compensation Insurance Authority as a true document.

No Colorado authority has been provided to the PDJ and Hearing Board on willful impersonation in the context of disciplinary proceedings, and the PDJ's own research comes from sister jurisdictions. In the case *In the Disciplinary Matter Involving Ronald T. West,* 805 P.2d 351 (Alaska 1991), respondent attorney represented a client in a matter concerning recovery of damages against the state for uninsured items lost or damaged in an auto accident. The respondent was in the course of resolving the mat-

---

4. § 12–55–102(3), 5 C.R.S. (Supp.1982) defines "notary" or "notary public" as "any individual

*appointed and commissioned* to perform notarial acts" (emphasis added).

ter through settlement when the client died. Rather than inform the state that the client had died, the respondent requested that the client's wife execute a release signing her deceased husband's name. Respondent then notarized the release stating that he had witnessed the signatures of the deceased client and his wife. The respondent then exchanged the release for the settlement check made out to the deceased client and respondent. In the disciplinary proceeding against the respondent, he asserted that his conduct did not violate DR1–102(A)(4) (the predecessor to Rule 8.4(c)) among other rule violations, because his actions, while possibly negligent, were not intentional. He further argued that his actions in regard to the release were neither fraudulent nor material since the release was not relied upon by the state in making the settlement. The Alaska Supreme Court rejected respondent's contentions, made a finding that respondent's conduct was both knowing and intentional, and thus found a violation of DR1–102(A)(4), stating that respondent intended the consequences of his actions; he intended that the state go through with the settlement believing that the deceased client signed the release. The court noted that the requisite intent does not have to include malfeasance, only "the conscious objective or purpose to accomplish a particular result." *West*, 805 P.2d at 356, *citing* the ABA *Standards*' definition of intent as "the conscious objective or purpose to accomplish a particular result."

A case from the Utah Supreme Court concerns similar misconduct to the within matter. The attorney respondent in the case *In the Matter of the Discipline of Mark H. Tanner*, 960 P.2d 399 (Utah 1998) accepted a settlement offer without the client's permission or knowledge, forged and back-dated a special power of attorney, and had his wife, a notary, notarize the document with an expired seal to lend to the document's authenticity. The respondent attorney then presented the document to an Assistant United States Attorney and settled the case. The attorney, relying on the forged document, turned the funds over to the respondent attorney, who, still without contacting his client, took a portion of the returned amount for himself as attorney fees and expenses. A short time later, the respondent attorney told the client about the settlement, and a month later, over the client's objection, told the client he intended to keep the entire settlement amount as his fee. The respondent attorney was disbarred. Based on the authority set forth above, the PDJ and Hearing Board find that Barringer's conduct constitutes grounds for discipline under C.R.C.P. 251.5(b) and a violation of Colo. RPC 8.4(b).

Under Colorado law, a notary appointment and commission is valid for a period of four years unless the commission is revoked. § 12–55–103, 4 C.R.S. (2000). Barringer failed to renew his commission since its expiration in 1982. His affixing his notary seal to the settlement document to attest to the veracity of Ciancio's signature, noting an invalid future date of expiration of his notary commission, and delivering the settlement agreement to the Colorado Compensation Insurance Authority as a true document establishes that his conduct was knowing. Therefore, Barringer knowingly and willfully impersonated a notary by affixing his signature and notary seal to the settlement documents and thereby violated Colo. RPC 8.4(b).

Claim four alleges a violation of Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information), Colo. RPC 1.15(b)(a lawyer shall, promptly deliver to the client any funds that the client is entitled to receive), Colo. RPC 8.4(c)(engaging in dishonesty, deceit, fraud or misrepresentation), Colo. RPC 8.4(b)(committing a criminal act that reflects adversely on the lawyer's honesty) and grounds for discipline pursuant to C.R.C.P. 251.5(b). Barringer violated Colo. RPC 1.4(a) by failing to adequately communicate with Ciancio and failing to advise him of the status of the worker's compensation matter for over a thirteen-month period. Barringer's failure to timely provide the settlement funds to Ciancio constitutes a violation of Colo. RPC 1.15(b).

The factual basis in claim four for the alleged violation of Colo. RPC 8.4(b) is the same as the facts set forth in claim three.

Accordingly, having found a violation of Colo. RPC 8.4(b) in claim three based on the same factual allegations, the PDJ and Hearing Board dismiss the alleged violation of Colo. RPC 8.4(b) in claim four.

The alleged violation of Colo. RPC 8.4(c) in claim four is premised upon Barringer's knowingly false statements to his client that the worker's compensation matter had not settled, when in fact, it had, and his knowingly false statement that the settlement funds were in his trust account when, in fact, these funds had been spent by Barringer. Such misconduct violated Colo. RPC 8.4(c).

Claim five alleges a violation of Colo. RPC 1.15(a)(an attorney shall hold property of clients that is in an attorney's possession separate from the attorney's own property) and Colo. RPC 8.4(c)(engaging in dishonesty, deceit, fraud and misrepresentation amounting to knowing conversion). The alleged violation of Colo. RPC 1.15(a) in claim five was dismissed upon the People's motion at the sanctions hearing. The alleged violation of Colo. RPC 8.4(c) is based on Barringer's knowing misappropriation of the proceeds from the workers' compensation settlement. Pursuant to the agreement between Barringer and Ciancio, Barringer was required to "retain any sums received in such a settlement until all fees and costs are paid" relating to the three criminal and traffic matters. Barringer endorsed the settlement check with Ciancio's name although he did not have permission to do so, and deposited the check into his trust account on August 26, 1997.

Notwithstanding the requirements set forth in the agreement, Barringer spent virtually all of Ciancio's settlement funds prior to September 26, 1997. Even if Barringer had fully earned the $7,500 fees associated with the other criminal and traffic matters in which he represented Ciancio prior to September 26, 1997, and the full one third contingency of $5,000 for Barringer's fees in the worker's compensation matter, Barringer's trust account should have still retained no less than $2,500 of Ciancio's funds. However, on September 25, 1997, Barringer's trust account had a balance of only $233.74. Barringer therefore converted at least $2,266.26

of his client's funds between August 26, 1997 and September 25, 1997.

Ciancio engaged in extensive efforts to obtain information about the status of his worker's compensation claim. Although Barringer was fully aware that the case had settled, funds had been dispersed, and indeed, Barringer had misappropriated some portion of those funds, Barringer repeatedly told Ciancio the matter had not yet settled. The level, degree, extent and duration of the deceit practiced upon Ciancio by Barringer with regard to the worker's compensation settlement establishes that his conduct was willful and knowing. In *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996) the Supreme Court stated:

> Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." (citations omitted). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." (citations omitted). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation.

Barringer's use of the funds belonging to Ciancio constitutes knowing conversion, in violation of Colo. RPC 8.4(c). *In re Cleland*, 2 P.3d 700, 703 (Colo.2000)(attorney knowingly misappropriating funds belonging to a client or a third person); *People v. Coyne*, 913 P.2d 12, 14, (Colo.1996)(attorney knowingly misappropriating client funds and engaging in neglect).

Claim six of the Complaint alleges that Barringer's conduct violated Colo. RPC 8.4(c), based on Barringer's misrepresentation in the course of an investigative interview with the Office of Attorney Regulation Counsel that his notary commission would not expire until June 1, 2001, when in fact it had expired in 1982. Because we have concluded in an earlier portion of this decision that Barringer knew his notary commission had expired, his statement to the Office of Attorney Regulation Counsel that his notary

commission was still valid is a knowing false statement during the course of an investigation and a violation of Colo. RPC 8.4(c). This misrepresentation obstructed the Office of Attorney Regulation Counsel in the performance of its duties.

## IV. IMPOSITION OF SANCTIONS

Barringer's knowing conversion of funds belonging to Ciancio warrants disbarment in the absence of significant factors in mitigation. *See In re Thompson,* 991 P.2d 820, 823 (Colo.1999); *People v. Varallo,* 913 P.2d 1, 12 (Colo.1996); *People v. Young,* 864 P.2d 563, 564 (Colo.1993). *See also* ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") 4.11 (providing that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client).

Barringer's knowing misrepresentations to Ciancio with regard to the proceeds of the settlement when Barringer benefited from the use of the settlement proceeds also warrants disbarment. *See* ABA *Standard* 4.61 (providing that disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client).

Barringer's actions caused serious harm to Ciancio. Ciancio was misled for a period of thirteen months that his worker's compensation matter had not settled and was deprived of the use of the settlement proceeds. In addition to the private harm suffered by the client, the public suffered harm as a result of Barringer's conduct in affixing his client's name to the settlement agreement, endorsing the settlement check with the client's name, and notarizing the settlement agreement when he did not have a current notary commission. As the Alaska Supreme Court stated in *West,* 805 P.2d at 356, "at a minimum misuse of a notary seal impairs confidence in an attorneys' honesty." The *West* court referred to the conclusion of the Panel which stated:

> [A]ctual injury to both the public and the legal profession occurs whenever an attorney falsifies documents, intentionally misuses his notary seal, or similarly deceives the public or an opposing party. Such actions fall well below the standard of conduct expected of attorneys and, if nothing else, destroys both the public's and the legal system's confidence in the honesty of the attorneys with whom they have dealings. *West,* 805 P.2d at 357.[t]he bar and the public have a right to expect that lawyers will not counsel their clients to affix false signatures to legal documents, misuse their notary power to verify what the attorney knows is a false signature or use documents falsely signed and notarized in settlement of legal disputes: We cannot ignore the fact that our paramount duty, "lies in the assurance that the public will be protected in the performance of the high duties of ... attorneys ... [o]ur primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise for the attorney's failure to do so."

*Id., citing Disciplinary Matter Involving Buckalew,* 731 P.2d 48, 54 (Alaska 1986)(*quoting In re Possino,* 37 Cal.3d 163, 689 P.2d 115, 120, 207 Cal.Rptr. 543 (Cal. 1984)).

The PDJ and Hearing Board conclude that Barringer's affixing Ciancio's signature to the settlement agreement without authorization, and his willful impersonation of a notary also warrants disbarment. *See* ABA *Standard* 5.11(a) (providing that disbarment is generally appropriate when a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, *misrepresentation,* fraud, extortion, misappropriation, or theft). The misuse of a notary undermines the integrity of the legal system. *In the Matter of Robert F. Hahn,* 195 A.D.2d 105, 606 N.Y.S.2d 933, 935 (N.Y.App.Div.1993)(disbarring attorney for, among other violations, a finding that he engaged in dishonesty, deceit, fraud and misrepresentation by notarizing the signature of a fictitious person he knowingly created for the purpose of concealing his involvement with a real estate project and presented the document to a third person); *In re Petition for Disciplinary Action Against Jerome J.*

*Holmay,* 464 N.W.2d 723, 725 (Minn.1991)(suspending attorney for eighteen months, for, among other violations, directing his secretary to have a notary notarize the signatures on a will although the notary had not witnessed them); *In the Matter of Michael A. Alvaro,* 56 A.D.2d 693, 391 N.Y.S.2d 722 (N.Y.App.Div.1977)(suspending attorney for a period of six months for, among other rule violations, endorsing a check without his client's permission and misusing his office notary public by knowingly executing a false affidavit and service of a summons and deceiving the court and the parties as to service of the summons).

The Commentary to ABA *Standards* 5.11 further provides:

> A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer ... [i]n imposing final discipline in such cases, most courts impose disbarment on lawyers who are convicted of serious felonies.

Barringer's numerous misrepresentations and dishonest actions amounting to a pattern of deceit add weight to the PDJ and Hearing Board's determination that disbarment is the appropriate sanction in this matter.

The PDJ and hearing board considered matters in mitigation and aggravation pursuant to ABA *Standards* 9.22 and 9.32 respectively. In aggravation, Barringer had one prior disciplinary offense consisting of a letter of admonition in June 1997, *see id.* at 9.22(a), he had a dishonest or selfish motive, *see id.* at 9.22(b), he engaged in multiple offenses, *see id.* at 9.22(d), he engaged in bad faith obstruction of the disciplinary proceeding by affirmatively misrepresenting the expiration of his notary seal to the Office of Attorney Regulation Counsel, and failing to meaningfully participate in the proceedings,[5] *see id.* at 9.22(e), Barringer had substantial experience in the practice of law, having practiced since 1979 and having served as an administrative law judge, *see id.* at 9.22(i), and Barringer failed to demonstrate he had any intention of making restitution, *see id.* at 9.22(j). Barringer failed to appear at the sanctions hearing; therefore no factors in mitigation were presented.

## V. ORDER

It is ORDERED as follows:

1.  MONTIE L. BARRINGER, registration number 08658 is DISBARRED effective thirty-one days from the date of issuance of this Order. His name shall be stricken from the roll of attorneys licensed to practice law in this state.

2.  Respondent is Ordered to pay the costs of these proceedings.

3.  The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

---

**5.** On March 3, 2000, default entered as a sanction against Barringer for failing to appear at the pre-trial conference, failing to respond to motions, failing to file a responsive answer, failing to respond to discovery requests, and failing to respond to his scheduled deposition.