82 P.3d 389 (2003)
The PEOPLE of the State of Colorado, Complainant,
v.
William E. PETERS and Edward C. Kusick, Jr., Respondent.
No. 03PDJ010.
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.
December 23, 2003.
Opinion issued by a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") ROGER L. KEITHLEY and JERRY D. OTERO and JOHN M. LEBSACK, both members of the bar.

OPINION AND ORDER IMPOSING SANCTIONS
Sanction: Re: William E. Peters: PUBLIC CENSURE
Re: Edward C. Kusick: PUBLIC CENSURE
A trial in this matter was held on August 4, 2003, before a Hearing Board consisting of the Presiding Disciplinary Judge Roger L. Keithley and two Hearing Board Members, Jerry D. Otero and John M. Lebsack, both members of the bar. Fredrick J. Kraus, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). William E. Peters ("Peters") appeared pro se. Alexander R. Rothrock appeared on behalf of Edward C. Kusick, Jr., ("Kusick") who was also present.
At the trial, the People's exhibits 1, 5 and 6 (except page 2), and Kusick's exhibits A and B were admitted into evidence. Judge Claudia Jordan testified on behalf of the People. Peters and Kusick testified on behalf of themselves. The Hearing Board considered the testimony of the witnesses and the exhibits admitted into evidence, the argument of the parties, the Joint Stipulation of Facts submitted by the parties on July 31, 2003, and made the following findings of fact which were established by clear and convincing evidence.

I. FINDINGS OF FACT
William E. Peters and Edward C. Kusick, Jr. have taken and subscribed the oath of *391 admission, and were admitted to the bar of the Supreme Court on October 19, 1981 and October 28, 1989 respectively. Peters is registered upon the official records of the Court, attorney registration number 11326, and Kusick is registered under attorney registration number 18876. They are subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).
Peters is a friend and former law partner of Kusick. Kusick was suspended from the practice of law for thirty-six months beginning on July 7, 2001. Immediately prior to the effective date of his disciplinary suspension, Kusick through his professional corporation, Edward C. Kusick, Jr., P.C. filed numerous suits against his former clients for fees owing. After the effective date of suspension, Peters agreed to represent Kusick and Edward C. Kusick, Jr. P.C. in all pending suits and agreed to file any additional suits to collect Kusick's fees. The suits were filed in the County Court for the City and County of Denver.
Harry Gerlock ("Gerlock") was a former client of Kusick who owed money to Kusick for attorney fees. Kusick had a judgment against Gerlock for fees owing. Kusick had also obtained a judgment against Gerlock's son-in-law, Richard Jiron, for checks given to Kusick to pay Gerlock's attorney fees which did not clear the bank.
Peters employed Gerlock as a process server commencing in June 2001. An arrangement was made that Gerlock would receive a flat fee for serving each set of papers. Gerlock was only paid for his efforts when service upon a defendant was complete. One half of Gerlock's fee would be credited toward the outstanding judgment of Richard Jiron and one-half would consist of a payment to Gerlock. Kusick agreed to this arrangement.
Peters knew that Gerlock was a taxi driver, had no previous experience as a process server but was familiar with the local streets, and had worked for a traffic accident videographer. Peters knew that Gerlock had previously testified in court. Peters did not seek references for Gerlock and did not conduct a criminal background check on him.
Because there were numerous papers to be served in these many lawsuits, Peters devised a method for completing an affidavit of service by devising a form entitled "Affidavit/Certificate of Service." The affidavit forms were preprinted and contained blanks for the case caption, the case number, the person served, the documents served, the method of service, where service was effected, and the date of service. The affidavits also contained blanks indicating the date the "Affidavit/Certificate of Service" was sworn in front of the notary public, a blank for the notary public's signature, and the date the notary public's commission expired.
Peters and Gerlock also set up a process for serving papers. Peters prepared a second form called a "service sheet," which consisted of the name, home and work address, telephone numbers, date of birth, age, Social Security number, height, weight, hair color, eye color, vehicle description, a space for any other information, and the auto license number of the person to be served. The service sheet was then attached to the documents to be served. Gerlock picked up the documents to be served from Kusick or Peters with the service sheet attached.
Gerlock traveled around the metropolitan Denver area and served documents for Peters. On a regular basis, Gerlock would come to Peters' office and report to Peters whom he had served, how he served them, and when and where the service took place. Gerlock would write on the bottom of the service sheet the name of the person, time, place and date of service. Gerlock would then sign one blank Affidavit/Certificate of Service document for every person he had served since his last visit.
Peters did not accompany Gerlock while he was performing service of process. On more than one occasion, however, Peters went over with Gerlock the fundamentals of process service, including how to handle himself with the defendants, who qualified for substitute service, and where to locate public information on elusive defendants. Peters instructed Gerlock that in serving contempt citations, service must be effected on the named respondent and substitute service would not be adequate. On occasion Gerlock took photos *392 of the defendants he had served. At Peter's request, another employee of Peters occasionally rode with Gerlock to make sure Gerlock understood how to accomplish proper service.
Peters went over the service sheets with Gerlock in person in order to confirm the details of service so that he could prepare the affidavits for filing with the court, and to confirm each successful service before he paid Gerlock.
In order to expedite the process, Peters had Gerlock pre-sign the affidavit forms in batches of ten or twenty. Peters would then cause the signed affidavit forms to be completed based upon the information Gerlock supplied on the informal service sheet forms. Peters did not have Gerlock review the pre-signed forms after their completion.
Three women who worked for a law firm next to Peter's office were notaries public. In June, 2001, at the outset of the arrangement, Gerlock executed an Affidavit/Certificate of Service in front of two of the three notaries public so that they could confirm that he was indeed the person he purported to be by his signature.
Thereafter, Kusick, Peters or both of them took completed, pre-signed affidavits to the three notaries to have Gerlock's signature notarized without Gerlock being present. Peters knew that Gerlock had signed the affidavits when they were blank, and knew that Gerlock had not reviewed the "filled in" portions of the affidavit. Kusick knew that Gerlock had signed the affidavit in blank.
Peters caused the notarized, pre-signed Affidavits/Certificates of Service to be filed with the Denver County Court approximately 349 times in approximately 187 separate lawsuits pending in the Denver County Court.
Peters knew the affidavits were required by the Colorado Rules of Civil Procedure, Rule 4(h)(2), and that the affidavits were material to demonstrating service of process in the lawsuits. Peters filed the affidavits with the court to show the defendants were served with the described documents.
On several occasions Kusick took documents to the notaries public for notarization. On those occasions, Kusick requested that the notaries notarize the documents although the person whose signature was being notarized was not physically present before the notary.
Some of lawsuits in which the pre-signed affidavits were used were assigned to the Honorable Claudia Jordan of the Denver County Court. In one matter assigned to Judge Jordan, the defendant appeared in court to state that she had not been served with the legal papers in question. Judge Jordan held a hearing on November 15, 2001, and learned of Peters' method of completing the affidavits. When the court made inquiry into proper service in several other cases, Peters acknowledged the arrangement he had devised with Gerlock and the notaries. Recognizing that the service in those cases were based upon defective affidavits of service, Peters confessed the dismissal of those cases or agreed to vacate hearings scheduled with the court.
At the time Peters filed the defective affidavits with the court he did not recognize that the notarization arrangement he had devised would affect the validity of service. Peters was not trying to deceive the court. To Peters' knowledge, the information supplied by Gerlock on the service sheets which was transferred to the pre-signed affidavits was true and correct and reflected that the persons identified as being served were, in fact, served with the necessary documentation.
Peters lost confidence in Gerlock in mid to late October 2001 because Gerlock was entrusted with funds by Peters and the funds disappeared. Peters contacted the police to investigate the possible theft of those funds. The employment relationship between Gerlock and Peters terminated in October 2001.
In December 2001, Gerlock filed a request for investigation against Kusick with the Office of Attorney Regulation Counsel. Gerlock's report suggested that he had not served everyone he had previously told Peters he had served. Upon learning that Gerlock had suggested that the information set forth on the service sheets provided to him by Gerlock might be false, Peters moved to vacate all matters in which a default judgment *393 had entered based upon service by Gerlock. Peters moved to dismiss without prejudice any case in which Gerlock had served a complaint. If service involved a contempt citation or bench warrant, Peters moved to strike the warrant and in some cases moved to dismiss the complaint. Peters took remedial steps in all divisions of Denver County Court where matters were pending involving service by Gerlock. Peters undertook this remedial action voluntarily and at his own expense.
Peters expressed remorse for the service arrangement he had set up with Gerlock. His reasoning in setting up the procedure with Gerlock was only to expedite the process and he recognizes now that it was short sighted and incorrect to take these shortcuts. His rationale in setting up the procedure was to lessen the impact on the notaries from the law firm next door. He did not pay them; rather, he bought them lunch every week. He apologized to the notaries who notarized Gerlock's signature in his absence. Peters apologized to the presiding judges in all divisions where the matters were pending.

II. CONCLUSIONS OF LAW
The Amended Complaint in this matter consists of six claims alleging violations of the Rules of Professional Conduct ("Colo.RPC") against one or both of the respondents.
The Amended Complaint alleges that Peters violated Colo. RPC 3.3(a)(1)(knowingly making a false statement of material fact or law to a tribunal) in claim one; Peters and Kusick violated Colo. RPC 8.4(b)(it is professional misconduct for an attorney to commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney) in claim two; Peters violated Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) in claim three; Peters violated Colo. RPC 8.4(d)(it is professional misconduct for an attorney to engage in conduct prejudicial to the administration of justice) in claim four; Peters violated Colo. RPC 5.3(b)(a lawyer having direct supervisory authority over a non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer) in claim five,[1] and Peters violated Colo. RPC 1.8(a)(an attorney shall not enter into a business transaction with a client) in claim six.[2]
On July 31, 2003, the PDJ granted the People's Motion for Summary Judgment as to Kusick on claim two of the Amended Complaint as to Kusick's actions constituting a violation of Colo. RPC 8.4(b), and the violation was established as a matter of law. The PDJ also granted the People's Motion for Summary Judgment as to claim two against Peters, establishing a violation of Colo. RPC 8.4(b), claim three, establishing a violation of Colo. RPC 8.4(c), and claim four establishing a violation of Colo. RPC 8.4(d). The PDJ denied the People's Motion for Summary Judgment as to Peters with regard to Colo. RPC 3.3(a)(1) in claim one and Colo. RPC 5.3(b) in claim five. At the time of trial it remained for the Hearing Board to determine if Peters' conduct violated Colo. RPC 3.3(a)(1) and Colo. RPC 5.3(b) and the appropriate discipline to be imposed against both respondents.
The relevant portions of the PDJ's ruling on the People's Motion for Summary Judgment are attached as Attachment A analyzing the violations found. See Attachment A.
Colo. RPC 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. The evidence presented at trial established that Peters prepared forms for his process server, Gerlock, to fill out when he effected service. Peters would use the information inserted in the forms by Gerlock to complete blank pre-signed affidavits by filling *394 in the case caption, the case number, the person served, the documents served, the method of service and where service was effected. He would then have the pre-signed affidavits notarized by notaries who had witnessed Gerlock's signature on a prior occasion. No evidence was presented that the information regarding the defendants upon whom service was effected or the manner of service was known by Peters or Kusick to be false.
The alleged violation of Colo. RPC 3.3(a)(1) relies upon the fact that the affidavit contained a jurat stating "subscribed and sworn to" by the notaries when in fact Gerlock was not present when they affixed their notary seal. The Complaint alleges that Peters' filing of those affidavits with the court constitutes a material misrepresentation of fact to a tribunal by Peters. The jurat, however, was a written statement made by the notaries, not Peters. In order to find a violation of Colo. RPC 3.3(a)(1) on these facts, it is necessary to conclude that by filing the completed affidavits, Peters adopted the notaries' statements to the court as his own. Attorneys frequently file the affidavits of third parties with courts. In so doing, they do not adopt the statements made in those affidavits as their own statements. The Hearing Board is unwilling to find that an attorney is accountable under Colo. RPC 3.3(a)(1) for the veracity of statements made in an affidavit by a third person and filed with a tribunal. To do so would make the attorney filing an affidavit a guarantor of statements made in an affidavit.[3]
Peters reviewed the information pertaining to service with Gerlock and used the information to fill out the affidavit. He had no reason to believe that the information in the body of the affidavits contained material misrepresentations at the time they were filed with the court. Peters and Gerlock talked about each and every service sheet. Information in the service sheet was taken verbatim and transferred to the affidavits/certificates of service.
Further, although evidence was presented that Peters knew the court would rely upon the affidavits to establish that proper service was effected in the case, no evidence was presented that would establish Peters knew at the time he filed the affidavits that their substantive content was untrue. On the contrary, Peters' testimony was credible that he believed that the persons represented to have been served were in fact served and that his devised arrangement for completing the affidavits could expedite the service of process by having the affidavits notarized by individuals who had previously witnessed the process server's signature. Peters did not believe that an incorrectly notarized jurat would void the validity of the affidavit. Accordingly, the Hearing Board finds that no violation of Colo. RPC 3.3(a)(1) was proven by a clear and convincing standard and that claim against Peters is dismissed.
Claim five alleges a violation of Colo. RPC 5.3(b)[4] against Peters which provides with respect to a non-lawyer employed or retained or associated with a lawyer, the lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.
The evidence presented at trial established that Peters explained to Gerlock what he must do to comply with the Rules of Civil Procedure in effecting service. He explained what information was required to obtain about the defendant, when substitute service could be used, required another employee to travel with Gerlock to ensure he was achieving proper service of process and reviewed every form filled out by Gerlock to confirm the correct individual was served. The steps Peters took to inform Gerlock how to effect service of process were both reasonable and adequate to assure that Gerlock's conduct was compatible with Peter's professional obligations. Accordingly, the Hearing Board finds that the People failed to prove by a clear and convincing standard that Peters failed to make reasonable efforts to ensure *395 that the process server's conduct was compatible with Peters' professional obligations and dismiss claim five against Peters.

III. IMPOSITION OF SANCTION
Peters' conduct in the within matter violated Colo. RPC 8.4(b), Colo. RPC 8.4(c) and Colo. RPC 8.4(d). The conduct of Peters and Kusick in attempting to quickly process affidavits of service by having the notaries notarize Gerlock's signature when he was physically present would amount to a class 2 misdemeanor. See § 12-55-116, 4 C.R.S. (2002).
The ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") are the guiding authority for imposing sanctions. In re Roose, 69 P.3d 43, 46-47 (Colo.2003). Each element of the ABA Standard must be established to impose the sanction specified by a clear and convincing standard. See id. The People contend that the appropriate ABA Standard under which to impose discipline is Standard 6.11 which provides:
Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
The evidence presented at trial did not establish that Peters had the requisite intent to deceive the court, nor that Peters himself made a false statement to the court. Peters believed at the time he submitted the affidavits to the court that a faulty jurat would not impact the validity of the information contained in the affidavit. Accordingly, ABA Standard 6.11 does not apply to the rule violations established against Peters.[5]
ABA Standard 6.13 provides:[6]
Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
ABA Standard 7.3 provides:
Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public or the legal system.
Reprimand, or public censure is the presumed sanction under the ABA Standards applicable to the conduct of both Peters and Kusick. Both Peters and Kusick were negligent in failing to ensure that their method of expediting execution on the affidavits would not impact the veracity of the documents. Peters' actions caused an adverse effect on the legal proceedings in which the affidavits were filed by necessitating the court to vacate prior orders or dismiss cases, and by requiring the court to spend additional time on the matters. Peters took remedial action in each case in which an affidavit had been filed to rectify any erroneous service that was effected or may have been effected by Gerlock. Kusick's actions in bringing the documents to the notaries assisted Peters' actions whichin turncaused an adverse effect on the legal proceedings in which Gerlock served affidavits. In the case In re Confidential, D.N. 235-78 (Bd.Pro.Resp. November 29, 1979) the District of Columbia Court of Appeals issued a public censure against the respondent attorney who, on four separate occasions, obtained signatures for affidavits which he then filed with the court. The notarization of the signature did not occur while the signatory was present. In finding that a private admonition was warranted, the court considered mitigating factors including the respondent attorney's energetic *396 advocacy on behalf of his client, and the fact that he was held in high regard in the legal community. The court further stated:
[A]lthough we firmly believe that as long as the notarization requirements are a part of our law, no lawyer may ignore them with impunity, we also note the growing movement to replace the once inviolable notarized affidavit with a simple signed declaration under penalty of perjury.
Id. at p. 5, citing, e.g., 28 U.S.C. § 1746 (1976); Fed.R.Civ.P. 11, 26 U.S.C. §§ 6065, 7026.
See also Cincinnati Bar Assoc. v. Reisenfeld, 84 Ohio St.3d 30, 701 N.E.2d 973, 974 (1998) (respondent attorney received public reprimand was appropriate for one attorney who on two occasions submitted improperly notarized affidavits to the court by having clients sign blank sheets of paper before attorney completed the affidavits, but affidavits were accurate renditions of clients' statements and six month suspension with the full period stayed appropriate for another attorney who on six occasions, submitted improperly notarized affidavits to the court by having the clients sign blank sheets of paper before attorney completed the affidavits and where attorney added to one of the affidavits a statement that the client allegedly had never made but where affidavits were otherwise correct); In re Celsor, 330 S.C. 497, 499 S.E.2d 809 (1998)(respondent attorney was given a public censure for multiple acts of misconduct, including signing a client's name and then notarizing the 4 signature on the documents filed with the court); Florida Bar v. Farinas, 608 So.2d 22, 24 (Fla.1992) (respondent attorney received public reprimand for requesting that a notary notarize the signatures of his out-of-state client on interrogatories when the clients were not present before the notaries); In the Matter of the Application for the Discipline of John T. Finley, 261 N.W.2d 841 (Minn.1978) (respondent attorney received public censure for falsely notarizing documents not signed in his presence, relying solely on assurances of a friend and business associate that the information was accurate, where attorney had no intent to defraud, was unaware of the forgeries, was cooperative in the disciplinary proceedings, and had no prior discipline).
Aggravating and mitigating factors must be considered in arriving at the appropriate sanction. See ABA Standards 9.22 and 9.32. With regard to Peters, he has had several prior disciplinary offenses, an aggravating factor pursuant to Standard 9.22(a): he received a letter of admonition in February 1989 for neglect of one legal matter, in March 1993, he received a suspension of forty-five days pursuant to a Conditional Admission of Misconduct for failing to withdraw from representation and collecting fees improperly from his clients. Most recently, in July 1997, Peters received a private censure pursuant to a Conditional Admission of Misconduct for advertising which contained misleading information about the lawyer's services which one of Peters' non-lawyer partners created without Peters' review. Peters terminated the advertisement when it was brought to his attention. This is the fourth disciplinary matter against Peters. None of the prior matters involved conduct similar to the conduct here. However, because Peters acted negligently rather than with a culpable mental state, public censure is warranted rather than a more severe sanction. See People v. Hickox, 889 P.2d 47, 49 (Colo.1995) (holding that considering prior disciplinary matters, it was a "close call" whether public censure or a more severe sanction was warranted, but determining that public censure was appropriate where mental state was negligent).
The Hearing Board may also consider whether the prior misconduct was remote in time, see Standard 9.32(m). The misconduct in the present case occurred in 2001. Peters' prior misconduct occurred in 1989, 1993 and 1997 respectively. Although the first incident of misconduct may be remote in time from the present, the other two instances are not, having occurred eight years and four years prior to the conduct at issue. See In re Hickox, 57 P.3d 403, 407 (Colo.2002)(noting that where respondent's prior disciplinary offenses were only seven, five, and four years old, they were not remote in time for purposes of mitigation). The Hearing Board *397 also considered that Peters engaged in a pattern of misconduct, Standard 9.22(c) and had, at the time of the conduct giving rise to this proceeding, substantial experience in the practice of law. Standard 9.22(i).
In mitigation, the evidence established an absence of a dishonest or selfish motive, Standard 9.32(b). Importantly, Peters expended a great deal of time and his own finances to rectify the consequence of his filing the affidavits with the court: in each case, he took appropriate steps to vacate orders or dismiss cases where service had been effected by Gerlock. Peters' actions are considered as a mitigating factor pursuant to Standard 9.32(d). Peters also engaged in full and free disclosure to the People and a cooperative attitude toward the disciplinary proceedings, Standard 9.32(e). Finally, Peters evidenced remorse for his conduct, Standard 9.32(l). The mitigating factors weigh against imposing a greater sanction against Peters.
With regard to Kusick, he has one prior disciplinary matter, a three year suspension pursuant to a Conditional Admission of Misconduct which commenced in June 2001. The Stipulation arose from the following conduct and rule violations: in one matter, Kusick violated Colo. RPC 1.3 by neglecting a client's personal injury matter for over two years, and violated Colo. RPC 1.4(a) by failing to communicate with insurance representatives, engage in settlement discussions, gather adequate medical information and keep the client reasonable informed. Kusick violated Colo. RPC 1.5(a) by failing to honor the fee agreement, and Colo. RPC 5.1(b) by failing to adequately supervise associate attorneys. On two occasions, Kusick undertook representation of clients seeking reinstatement of their driver's licenses, accepted payment for the matters and subsequently did nothing on their matters in violation of Colo. RPC 1.3, respondent failed to keep the clients reasonably informed in violation of Colo. RPC 1.4(a), he charged an unreasonable fee by accepting payment from the clients and failed to render any services in the matters in violation of Colo. RPC 1.5(a). In one of the two matters, Kusick failed to surrender the client's advance payment fee upon termination when requested by the client and failed to provide an accounting in violation of Colo. RPC 1.16(d). In a separate matter, Kusick undertook representation of a client, failed to timely file an entry of appearance and waiver of arraignment and failed to take further action after filing an entry of appearance in violation of Colo. RPC 1.3, and failed to communicate with the client in violation of Colo. RPC 1.4(a). Kusick charged an unreasonable fee in violation of Colo. RPC 1.5(a) by accepting an advance fee and taking no action in the matter. In another matter, Kusick accepted a retainer in a matter involving a client with multiple driving offenses, but failed to enter his appearance in either case pending against him, failed to notify the jails where his client was incarcerated of his representation, failed to obtain release information, failed to take action on the client's motion for reconsideration of the sentence until over three months after he was hired, and failed to confer any benefit on the client. In another matter, Kusick accepted a retainer for representation of the client, failed to communicate with the client in violation of Colo. RPC 1.4(a) and failed to refund the retainer when requested in violation of Colo. RPC 1.16(d). Additionally, Kusick has had extensive experience in the practice of law, Standard 9.22(i). In mitigation, Kusick's misconduct did not demonstrate a selfish or dishonest motive, see id. at 9.32(b).
Although the disciplinary history of both Peters and Kusick might warrant a suspension of their licenses to practice law for a short period of time, the fact that substantial remedial measures were undertaken by them to rectify their misconduct convinces the Hearing Board that no suspension is necessary to adequately protect the public. Considering the aggravating and mitigating factors, the Hearing Board concludes that a public censure is the appropriate sanction for both Peters and Kusick.

IV. ORDER
It is therefore ORDERED:
1. WILLIAM E. PETERS, attorney registration number 11326 is given a PUBLIC CENSURE effective thirty-one days from the date of this Order.
*398 2. EDWARD C. KUSICK. JR., attorney registration number 18876 is given a PUBLIC CENSURE effective thirty-one days from the date of this Order.
3. Pursuant to C.R.C.P. 251.32, respondents shall pay the costs in conjunction with this matter; those costs pertaining to both Peters and Kusick shall be divided evenly against them; those costs which pertain only to one of the respondents shall be assessed against that respondent only. Complainant shall file a Statement of Costs within fifteen (15) days of the date of this Order; respondents shall have ten (10) days thereafter to file a Response.

Attachment A

I. Standard for Summary Judgment
Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Cissell Mfg. Co. v. Park, 36 P.3d 85, 87 (Colo.App.2001), citing Cung La v. State Farm Automobile Insurance Co., 830 P.2d 1007 (Colo.1992). The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. Churchey v. Adolph Coors Co., 759 P.2d 1336, 1339-1340 (Colo.1988). A party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. Id., citing Kaiser Found. Health Plan v. Sharp, 741 P.2d 714, 718 (Colo.1987); Mount Emmons Mining Co. v. Town of Crested Butte, 690 P.2d 231, 239 (Colo.1984).

II. PENDING MOTIONS
1. Complainant's Motion for and Brief in Support of Summary Judgment as to Respondent Edward C. Kusick, Jr., filed June 30, 2003, respondent's Response thereto filed July 14, 2003, and complainant's Reply filed July 25, 2003.
Complainant moves for summary judgment stating that there is no genuine issue as to any material fact and complainant is entitled to judgment as a matter of law on claim two of the Complaint, alleging that respondent's conduct violated Colo. RPC 8.4(b) constituting grounds for discipline pursuant to C.R.C.P. 251.5(b).
Colo. RPC 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness. Violation of Colo. RPC 8.4(b) does not depend upon either the actual charging of a criminal violation or conviction thereupon. In re Egbune, 971 P.2d 1065, 1072 (Colo.1999) (noting that grounds for lawyer discipline include: [a]ny act or omission which violates the criminal laws of this state or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action, citing prior rule C.R.C.P. 241.6(5)) and People v. Morley, 725 P.2d 510, 514 (Colo.1986) (conviction of criminal offense is not a condition precedent to attorney disciplinary proceedings involving the offense) (emphasis in original).
The Complaint and Answer in this action, along with the affidavits submitted in support of the complainant's Motion for Summary Judgment establish the following undisputed material facts:
On numerous occasions Kusick took documents to notaries public Michelle Sailor, Nicole Peterman or Nanette Leali for attestation. The documents had already been signed by a third person. Kusick requested that the notaries notarize the documents although the person whose signature was being notarized was not physically present before the notary. (See Paragraph 55 of Amended Complaint). § 18-1-603, 6 C.R.S. (2002) provides a person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense. Section 18-1-603 C.R.S. is commonly *399 referred to as the complicity statute under Colorado law. Complicity is not a separate and distinct crime or offense under the criminal code. Complicity is merely a theory by which a defendant becomes accountable for the criminal offense committed by another. People v. Hart, 787 P.2d 186, 189 (Colo.App.1989), citing People v. Thompson, 655 P.2d 416 (Colo.1982). The Complaint in this action alleges that Kusick aided and abetted one or more notaries public to violate § 12-55-110(4), 4 C.R.S. (2002). That section provides:
No notary shall sign a certificate or other statements as to a notarial act to the effect that a document or any part thereof was attested by an individual, unless:
(a) Such individual has attested such document or part thereof while in the physical presence of such notary; and
(b) Such individual is personally known to such notary as the person named in the certificate, statement, document, or part thereof, or such notary receives satisfactory evidence that such individual is the person so named. For purposes of this paragraph (b), "satisfactory evidence" includes but is not limited to the sworn statement of a credible witness who personally knows such notary and the individual so named, or a current identification card or document issued by a federal or state governmental entity containing a photograph and signature of the individual who is so named.
Section 12-55-116, 4 C.R.S. (2002) makes a violation of § 12-55-110(4) a class 2 misdemeanor. The false attestation of a document adversely reflects upon the integrity and honesty of the person falsely attesting. See generally People v. Barringer 61 P.3d 495, 500 (Colo.O.P.D.J.2001) (respondent attorney's notarizing a settlement document when he was not an active notary constituted the criminal act of official misconduct and willful impersonation, § 12-55-116 C.R.S. and § 12-5-117 C.R.S. respectively, constituting a violation of C.R.C.P. 251.5(b) and Colo. RPC 8.4(b)).
Respondent Kusick in his response to the Motion for Summary Judgment argues that there is no evidence of specific intent to aid or abet the commission of a violation of § 12-55-110(4). Specific intent, however, is not required under the complicity statute for general intent crimes. People v. Fisher, 9 P.3d 1189, 1191 (Colo.2000). Section 12-55-110 makes it a crime for a notary to attest the signature of another unless that person signs the documents in the physical presence of the notary. The undisputed facts in this case establish that notarizations were performed by notaries and encouraged by Kusick where the person whose signature was notarized was not in the physical presence of the notary at the time he placed his signature on the document. Kusick's request of the notaries to notarize those signatures satisfies the common meaning of "intent" required under the complicity statute.
The undisputed facts establish that Kusick aided, abetted and encouraged notaries public to attest the signature of third parties without those third parties being physically present at the time of the attestation. Accordingly, the undisputed facts establish that Kusick violated Colo. RPC 8.4(b) by such conduct.
Complainant's Motion for Summary Judgment as to respondent Edward C. Kusick, Jr. on claim two of the Amended Complaint is GRANTED.
2. Complainant's Motion for Summary Judgment as to Respondent William E. Peters filed June 25, 2003, respondent's Response filed July 24, 2003, and complainant's Reply filed July 29, 2003.
Complainant moves for summary judgment on the alleged violation of Colo. RPC 3.3(a)(1) in claim one; Colo. RPC 8.4(b), constituting grounds for discipline pursuant to C.R.C.P. 251.5(b) in claim two; Colo. RPC 8.4(c) in claim three, Colo. RPC 8.4(d) in claim four, and Colo. RPC 5.3(a) in Claim five.
Complainant's Motion for Summary Judgment as to the alleged violation of Colo. RPC 3.3(a)(1) in claim one is DENIED; genuine issues of fact remain as to whether respondent Peters made "a false statement of material fact or law to a tribunal."
Complainant's Motion for Summary Judgment as to the alleged violation of Colo. RPC *400 8.4(b) constituting grounds for discipline pursuant to C.R.C.P. 251.5(b) in claim two is GRANTED. No genuine question of fact remains as to respondent Peters encouraging the notaries public to attest to Harry Gerlock's signature on the purported affidavits when Gerlock was not physically present before them. Complainant is entitled to summary judgment as a matter of law on respondent Peters' actions constituting a violation of Colo. RPC 8.4(b) constituting grounds for discipline pursuant to C.R.C.P. 251.5(b). Such conduct reflects adversely on the lawyer's honesty. See generally Barringer 61 P.3d at 500 (respondent attorney's actions regarding notarizing a settlement document when he was not an active notary reflected adversely on the lawyer's honesty). The "numerous occasions" on which Peters sought the notaries' attestations reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. See Geoffrey C. Hazard, Jr. and W. William Hodes, The Law of Lawyering, § 65.4 3rd ed.2002 (stating that "a pattern of conduct might yield an assessment of unfitness that would not follow from an isolated incident"); see also Comment to Model Rule 8.4(stating that "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.").
Complainant's Motion for Summary Judgment as to Peters' alleged violation of Colo. RPC 8.4(c) in claim three is GRANTED. Peters filing affidavits with the court, knowing at the time he filed them they had not been sworn to by the affiant and knowing that the affidavits had been improperly notarized, and knowing that the court would rely upon the affidavits for jurisdictional purposes constituted conduct involving dishonesty and deceit, in that Peters failed to disclose to the court that the affidavits were defective. Absent proof of service through submission of valid service affidavits, or otherwise, personal jurisdiction over the opposing party would not attach. The fact that the service affidavits were defective was, as a matter of law, material to a finding of personal jurisdiction over a party.
Complainant's Motion for Summary Judgment as to the alleged violation of Colo. RPC 8.4(d) in claim four is GRANTED. No genuine question of fact remains as to whether Peters' conduct constitutes a violation of Colo. RPC 8.4(d) and complainant is entitled to judgment as a matter of law on claim four.
Complainant's Motion for Summary Judgment as to the alleged violation of Colo. RPC 5.3(a) is DENIED. Genuine issues of fact remain as to whether Peters failed to supervise or take reasonable steps to ensure Gerlock's conduct was compatible with the professional obligations of a lawyer.
NOTES
[1] Claim five actually alleges a violation of Colo. RPC 5.3(a) not Colo. RPC 5.3(b). The parties, however, referred throughout the proceeding to an alleged violation of Colo. RPC 5.3(b) and the Hearing Board considered the allegations under Colo. RPC 5.3(b).
[2] Claim six was dismissed upon the People's motion.
[3] The Complaint did not allege a violation of any other provision of Colo. RPC 3.3(a).
[4] See footnote 1.
[5] This Standard does not apply to Kusick insofar as there is no allegation that Kusick filed or aided and abetted the filing of false statements or documents with the court.
[6] ABA Standard 6.12 which provides for suspension requires proof that no remedial action was taken. The proof in this case demonstrates that Peters and Kusick took significant remedial action.