The PEOPLE of the State of
Colorado, Complainant

v.

Robert John MASON, Respondent.

No. 08PDJ088.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

June 15, 2009.

on behalf of the Office of Attorney Regulation Counsel ("the People") and Michael D. Gross appeared on behalf of Robert John Mason ("Respondent") who also appeared. The Hearing Board now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. *ISSUE*

Disbarment is generally appropriate when a lawyer knowingly violates the terms of a prior disciplinary order and thereby causes injury to a client, the public, the legal system, or the profession. The PDJ issued an order suspending Respondent from the practice of law and specifically ordered him not to practice law during his suspension. Thereafter, Respondent provided legal advice to one client and prepared legal documents for a second client. Is disbarment the appropriate sanction for his misconduct?

### II. *SUMMARY*

The Hearing Board finds clear and convincing evidence that Respondent knew that he could not *counsel, advise, or assist* any person in connection with legal rights and duties or to *prepare any legal documents* for anyone while under the PDJ's order of suspension. Nevertheless, Respondent ignored the PDJ's order and practiced law. Respondent's claim that he did not know his actions constituted the unauthorized practice of law rings hollow given his disciplinary history, which included a three-year suspension for substantially similar conduct. Based upon the clear and convincing evidence presented, the Hearing Board finds that Respondent knowingly disobeyed a court order in violation of Colo. RPC 3.4(c) as alleged in Claim One and engaged in the unauthorized practice of law in violation of Colo. RPC 5.5(a) as alleged in Claim Two. Accordingly, the Hearing Board concludes that the presumptive sanction of disbarment is appropriate in this case.

On March 10, 2009, a Hearing Board composed of FRANCES L. WINSTON, a citizen board member, SISTO J. MAZZA, a member of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a one-day hearing pursuant to C.R.C.P. 251.18. James S. Sudler appeared

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

## III. *PROCEDURAL HISTORY*

On September 11, 2008, the People filed a "Complaint" alleging two separate violations of the Colorado Rules of Professional Conduct. Respondent filed an "Answer" on October 10, 2008. On February 5, 2009, the PDJ held a hearing and thereafter denied a "Motion for Summary Judgment" filed by Respondent on November 7, 2008, and "Complainant's Response to Motion for Summary Judgment and Complainant's Motion for Judgment on the Pleadings of (sic) for Summary Judgment" filed by the People on December 9, 2008.

## IV. *FINDINGS OF FACT AND RULE VIOLATIONS*

The Hearing Board finds that the following facts and rule violations have been established by clear and convincing evidence.[1]

### *Jurisdiction*

Respondent has taken and subscribed the oath of admission, was admitted to the bar of this Colorado Supreme Court on October 18, 1961, and is registered upon the official records, Attorney Registration No. 04324. Therefore, he is subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b). Respondent's registered business address is 2993 Broadmoor Valley Road, Suite 204, Colorado Springs, Colorado 80906.

### *Suspension in Consolidated Case Number 05PDJ035*

In consolidated case number 05PDJ035, Respondent admitted that he had represented Sun Hee Park in a liquor licensing matter and had prepared and filed a liquor license application on behalf of Chong Suk Rosbach.[2] Respondent also admitted that by knowingly engaging in the practice of law while under a prior order of suspension, his actions in representing these two clients violated Colo. RPC 3.4(c) and Colo. RPC 5.5(a). The Hearing Board notes that these rule violations are the same rule violations alleged by the People in the present complaint against Respondent.

On August 24, 2005, consistent with the stipulation of the parties, the PDJ entered an "Order Approving Conditional Admission of Misconduct and Imposing Sanctions Pursuant to C.R.C.P. 251.22" in consolidated case number 05PDJ035. This order incorporated an "Agreement to Refrain from Practice of Law" signed by Respondent in which he expressly agreed to refrain from the practice of law during the stipulated three-year period of suspension. The agreement defined the practice of law as follows:

> The practice of law includes but is not limited to an unlicensed person's or a suspended lawyer's actions as a representative in protecting, enforcing or defending the legal rights and duties of another and/or *counseling, advising and assisting* that person in connection with legal rights and duties. In addition, *preparation of any legal documents* for others as a suspended lawyer is the unauthorized and unlicensed practice of law. All of the aforementioned actions constitute the practice of law *regardless of* the forum, court, agency, administrative body or governmental agency in which such actions occur or to which they may be related (emphasis added).[3]

Respondent also acknowledged that he would be in violation of the agreement if he engaged in any actions constituting the practice of law:

> The respondent specifically agrees to refrain from any actions constituting the

---

1. The parties stipulated to Exhibits 1–12, which have been incorporated into the Hearing Board's findings of fact.

2. *See* Stipulated Exhibit 12, "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct" in consolidated case number 05PDJ035.

3. *See* Exhibit D to Stipulated Exhibit 12, "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct" in consolidated case number 05PDJ035.

practice of law in Colorado. Should the respondent engage in any actions constituting the practice of law while his license is suspended he shall be subject to contempt of court proceedings and he shall be in violation of the Stipulation, Agreement, and Affidavit Containing the Respondent's Conditional Admission of Misconduct and Affidavit Containing the Respondent's Conditional Admission of Misconduct in Case Number 05PDJ035 (Consolidated with 05PDJ048).[4]

As stated above, the PDJ's order accepting Respondent's conditional admission of misconduct incorporated his written agreement. The PDJ specifically ordered the following:

> Respondent agrees to refrain from engaging in the practice of law unless he is under the direct supervision of another Colorado licensed attorney. Respondent signed an agreement attached as Exhibit D to the Stipulation. Respondent agrees any violation of this agreement shall subject him to contempt of court proceedings.[5]

The Hearing Board finds that the agreement signed by Respondent and approved by the PDJ is consistent with Colorado Supreme Court case law defining the practice of law.[6] The agreement affirmed that Respondent had read, studied, and understood it. Based upon this record, the Hearing Board finds that Respondent knew that filing legal documents or giving legal advice or counseling another while suspended would be unauthorized and would therefore constitute a violation of a condition of his agreement to refrain from the practice of law.

### The Ada E. Smith Trust Matter

On or about June 25, 2007, less than two years after agreeing to refrain from the practice of law in consolidated case number 05PDJ035, Respondent filed a "Notice of Election and Demand for Sale by Public Trustee" with the Pueblo County Clerk and Recorder. Respondent signed this document and others in the foreclosure action as "Agent" or "Agent of Owner." Respondent also submitted a bid of $29,672.20 and other documents arising out of the notice of election and demand.[7] While none of these documents necessitated a legal or adjudicatory analysis by a judge, the Public Trustee, other official, or the appearance of Respondent in a court of law, the Hearing Board finds that the "Notice of Election and Demand for Sale by Public Trustee" and other foreclosure documents submitted to the Public Trustee were in-fact legal documents as the term is commonly used and understood; that is, documents affecting legal rights.[8]

### The Lighthouse Matter

On October 29, 2007, Lighthouse Investments ("Lighthouse"), a mortgagor, sent Respondent a letter notifying him that their mortgagee, Mike Nelson, had defaulted on a mortgage held by Lighthouse.[9] The letter followed a discussion Respondent had with a representative of Lighthouse who requested Respondent's counsel concerning their difficulties with collecting delinquent mortgage payments from Mr. Nelson. Lighthouse sought a means to collect these delinquent mortgage payments. In their letter to Respondent, Lighthouse expressed their "desire" and "need" for Respondent's "legal representation."

During the discussion that preceded Lighthouse's letter to Respondent, Respondent had explained to Lighthouse the advantages of proceeding with a foreclosure action against Mr. Nelson rather than filing a lawsuit against him. Respondent specifically advised Lighthouse to proceed against Mr.

---

4. *Id.* at ¶ 3.

5. *See* Stipulated Exhibit 12, "Order Approving Conditional Admission of Misconduct and Imposing Sanctions Pursuant to C.R.C.P. 251.22."

6. *See Denver Bar Ass'n v. Public Utilities Comm'n,* 154 Colo. 273, 279, 391 P.2d 467, 471 (1964); *People v. Shell,* 148 P.3d 162, 171 (Colo. 2006).

7. *See* Stipulated Exhibits 5, 6, 7, 8, 9, and 10.

8. "Legal" means of or related to the law or permitted by the law. "Document" means instruments of authority. *See* Black's Law Dictionary 712 (7th ed.1999).

9. *See* Stipulated Exhibits 1 and 2. The Hearing Board notes that Mr. Nelson did not testify in these disciplinary proceedings.

Nelson through a foreclosure proceeding, because he reasoned that a foreclosure proceeding would be less costly and would provide a quicker resolution than bringing a lawsuit to collect their past due mortgage payments. Respondent also explained to Lighthouse that if they sued Mr. Nelson, he would be given an opportunity to file an answer, which would delay the process of collecting money from him. Finally, Respondent offered to assist Lighthouse in the foreclosure proceeding. The Hearing Board finds that Respondent engaged in the practice of law when he counseled Lighthouse on legal strategy and the advantages of proceeding with the foreclosure action.

On November 16, 2007, Respondent sent Mr. Nelson a letter on behalf of Lighthouse after agreeing to represent them in the foreclosure action.[10] Respondent informed Mr. Nelson of his obligation to pay all costs, court costs, Public Trustee fees and attorney fees pursuant to his agreement with Lighthouse. Respondent directed Mr. Nelson to deliver a check for $3,905.23 by November 26, 2007, or Respondent would proceed with the foreclosure action. Even though Respondent signed this letter "Robert J. Mason, Agent," the Hearing Board finds this letter to be substantially similar to a demand letter a lawyer commonly writes on behalf of a client before taking further action.

Respondent later collected two checks from Mr. Nelson while acting on behalf of Lighthouse. The first for $8,499.75 was returned to Mr. Nelson because it did not include two past-due payments and a second for $1,500.00 ostensibly for the costs of the foreclosure. Respondent admitted that he ultimately incurred no costs because he never initiated the foreclosure action. Respondent testified that he instead forwarded both checks from Mr. Nelson to Lighthouse and Respondent received payment of $350.00 from Lighthouse for his services.

Respondent also testified that he was careful to advise Lighthouse and others that he

was not a lawyer and simply acted as an agent. In his view, both his disclosure to clients that he was not a lawyer and his care to avoid court appearances demonstrates that he was not practicing law. We disagree. First, Respondent's characterization of his actions as that of an agent does not control our decision. Second, the practice of law is not confined to court appearances and the Hearing Board finds that Respondent was aware of the same based upon his prior disciplinary case.

### Analysis of Rule Violations

Respondent asserts that he never engaged in the unauthorized practice of law because the Colorado Revised Statutes authorized his actions in the Ada E. Smith Trust and Lighthouse matters to act as an agent for a holder of debt.[11] He testified that as a licensed lawyer, he frequently handled foreclosure actions and often observed non-lawyers doing the same. The People contend that Respondent cannot use the statutes to justify his actions in light of his status as a suspended lawyer pursuant to the agreement and order issued by the PDJ in consolidated case number 05PDJ035.

The Hearing Board finds that the statutes Respondent relied upon apply generally to foreclosures and do not purport to modify or redefine his obligations under a court order in the disciplinary system. Furthermore, the Colorado Supreme Court, not the legislature, has plenary jurisdiction over lawyers and a heightened concern for the conduct of suspended lawyers. Thus, Respondent's argument that he was simply doing what any non-lawyer could do is irrelevant. A suspended lawyer is subject to greater restrictions than a private citizen because he holds a law license. Along with the greater authority granted to a lawyer by virtue of his licensure, he is also subject to greater responsibility, which includes a

10. *See* Stipulated Exhibit 4.

11. *See* C.R.S. § 38–38–100.3(10). " 'Holder of an evidence of debt' means the person in actual possession of or otherwise entitled to enforce an evidence of debt; except that 'holder of an evi-

dence of debt' does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without any authority to enforce the evidence of debt or deed of trust...."

heightened responsibility to the judicial system as an officer of the court.[12]

We see little difference between the unauthorized practice Respondent previously admitted in consolidated case number 05PDJ035, and his conduct in representing the Ada E. Smith Trust and Lighthouse. Although Respondent did not appear before a tribunal or other administrative body in the present case, he nevertheless represented the interests of others by defending their legal rights and filing legal documents. Furthermore, as in the past, he now attempts to characterize his representation of others as something other than the practice of law. The Hearing Board finds that neither the law nor the facts presented here, including his agreement not to practice law while on suspension, support his position.

The Hearing Board further finds that Respondent's claim that he did not think he was practicing law when counseling the Ada E. Smith Trust and Lighthouse entirely inconsistent with the facts presented and his previous admission that he engaged in the unauthorized practice of law in consolidated case number 05PDJ035. Based upon the facts presented, the Hearing Board finds that Respondent received ample notice of what constitutes the unauthorized practice of law while under suspension. He was also given sufficient warning of the consequences of further practicing law while on suspension. We find Respondent's conduct was not the product of mistake or misjudgment; it was knowingly perpetrated. If Respondent failed to understand that his representation of the Ada E. Smith Trust and Lighthouse constituted the unauthorized practice of law, as he now claims, it was a product of willful blindness.[13]

In *People v. Cain*, 957 P.2d 346, 346–47 (Colo.1998), the Colorado Supreme Court found that a suspended lawyer who prepared six warranty deeds, a promissory note, and notarized six deeds of trust to secure the note, engaged in the unauthorized practice of law.[14] We find Respondent's actions on behalf of the Ada E. Smith Trust and Lighthouse constitute the unauthorized practice of law as provided in Colorado case law. Just as important to our legal analysis as case law defining the practice of law is Respondent's signed agreement, which contains nearly *verbatim* the language of the *Conway–Bogue* case cited above.

The Hearing Board therefore concludes that Respondent violated Colo. RPC 3.4(c) and Colo. RPC 5.5(a) in both the Ada E. Smith Trust and Lighthouse matters as alleged in Claim One and Claim Two of the People's Complaint.

## V. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[15] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA Standard 3.0 Considerations—Duty, Mental State, and Injury

We begin with the proposition that members of the legal profession must adhere to the highest moral and ethical standards and respect the rule of law. The Hearing Board finds that Respondent violated his duty to the legal system, violated other duties owed as a professional, and violated his duty to comply with prior disciplinary

12. *See State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116 (1974).

13. *See U.S. v. Heredia,* 483 F.3d 913, 917 (9th Cir.2007).

14. *See also Conway–Bogue Realty Inv. Co. v. Denver Bar Ass'n,* 135 Colo. 398, 411, 312 P.2d 998,

1004–05 (1957) (The preparation of legal documents, coupled with explanation or advice as to the legal effect thereof, constitutes the practice of law).

15. *See In re Roose,* 69 P.3d 43, 46–47 (Colo. 2003).

orders.[16] Respondent specifically violated his duty to comply with his own agreement (and subsequent disciplinary order) to refrain from the unauthorized practice of law. Lawyers are officers of the court with the duty to abide by legal rules of substance and procedure affecting the administration of justice. Here, Respondent failed to comply with this duty.

■ The Hearing Board next finds that Respondent *knowingly* engaged in the established misconduct.[17] He was aware of the nature or attendant circumstances of his conduct despite his claim that he acted in good faith. We find that this is purely Respondent's subjective belief. Objectively, the facts show Respondent practiced law while on suspension. After securing a suspension in consolidated case number 05PDJ035, in lieu of presumed disbarment for practicing law while on suspension in that case, Respondent agreed not to again practice law while under suspension. However, he did so again without referring to his agreement not to practice law while suspended. If officers of the court can ignore its orders, we cannot expect citizens to abide by them and respect for the judicial process is thereby severely jeopardized.

■ Finally, the Hearing Board finds that Respondent caused actual and potential injury to his clients, the public, the legal system, and the profession. Respondent's misdirected efforts to find a way around his agreement demonstrates little respect or deference for the disciplinary process and is in dereliction of his duties as an officer of the court. Respondent could have easily complied with his agreement not to engage in the practice of law by having a lawyer supervise his actions as set forth in the agreement. Nevertheless, Respondent unilaterally chose to modify the agreement thus causing injury to the integrity of the legal system and in particular the disciplinary process.

16. *See* ABA *Standards* 6.0, 7.0, and 8.0. In addition, ABA *Standard* 8.0 implicates duties owed to a client, the public, the legal system, and/or the profession.

17. *See* ABA *Definitions.* " 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the

### ABA Standard 3.0 Considerations—Aggravating Factors

Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.[18] The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction:

*Prior Disciplinary Offenses—9.22(a)*

A review of Respondent's prior discipline demonstrates a lengthy history of prior disciplinary offenses including the following:

- In May 1989, Respondent received a letter of admonition for contacting a represented party in violation of Colo. RPC 4.2. This discipline is remote and is of minimal consequence in our analysis of an appropriate sanction.[19]

- In May 1997, the Colorado Supreme Court suspended Respondent for six months based upon violations of Colo. RPC 1.7, 3.3(a)(2), 4.1(b), 8.4(c), and 8.4(d) after he failed to disclose to the court his interest in property that was the subject of litigation. Most important to the Hearing Board's determination of the appropriate sanction in the present case was the Colorado Supreme Court's finding that Respondent engaged in conduct involving dishonesty. However, the Hearing Board again considers this prior discipline remote and gives it minimal weight in determining the appropriate sanction.

- In October 2001, Respondent was suspended for one year and one day for violating Colo. RPC 1.1, 1.5(a), and 5.3(b) after he conducted an estate-planning seminar for the purpose of avoiding "rest" homecare costs.

conscious objective or purpose to accomplish a particular result."

18. *See* ABA *Standard* 9.21.

19. *See In re Hickox,* 57 P.3d 403, 407 (Colo.2002) and *People v. Peters,* 82 P.3d 389, 396 (PDJ Colo.2003).

- In March 2003, Respondent was suspended for one year and one day for violating Colo. RPC 1.15(b), 5.3(b), 1.3, 1.15(f), 5.5(b), 5.3(b), 1.5(a), and 1.16(d) in three separate client matters after he offered estate planning services and thereafter failed to properly supervise non-lawyer staff members who worked directly with the clients. Most important to the Hearing Board is the finding that Respondent expended client funds before he earned them and failed to return them when the client requested a refund.
- In August 2004, Respondent was suspended for an additional five months, resulting from his suspension in 02PDJ041 (the case addressed immediately above) for violating Colo. RPC 3.3(a)(1) after he signed an entry of appearance form in the Colorado Springs Municipal Court in the name of Robert Shoop, a licensed attorney. In a second case, Respondent did the same. In neither case did Mr. Shoop give Respondent permission to use his name nor did he appear at any time on behalf of the clients Respondent represented in his attempted appearance.
- In August 2005, the PDJ accepted Respondent's Conditional Admission of Misconduct and signed an order approving the same in consolidated case 05PDJ035 discussed in detail above.

Most important to the Hearing Board's determination of sanctions is the similarity between Respondent's conduct in the consolidated case 05PDJ035 and the present case. In both cases, Respondent represented others and when caught explained that he thought his conduct was authorized, that he was not acting as a lawyer, even though he assisted others in defending their legal positions and filed legal documents for them.

*Pattern of Misconduct and Multiple Offenses—9.22(c) and (d)*

The pattern of misconduct in 08PDJ088 is demonstrated in his insistence on practicing

law in one form or another while under suspension. Given Respondent's lengthy disciplinary history, especially that related to the unauthorized practice of law while under suspension, we find these aggravating factors apply.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g)*

Respondent contends that he did nothing wrong. He points to C.R.S. § 38–38–100.3 and C.R.C.P. 120 to support his claim that what he did was authorized by state law and the Colorado Rules of Civil Procedure. As stated above, we disagree.

*Substantial Experience in the Practice of Law—9.22(i)*

Respondent has practiced law for over twenty years in Colorado. Respondent's experience should have given him a better perspective on the activities he could and could not perform as a result of his suspension. Part of his experience as a lawyer includes his acknowledgment from prior conditional admissions of misconduct that he is familiar with the rules of the Colorado Supreme Court regarding the procedure for discipline of attorneys and with the rights provided by those rules.

### ABA Standard 3.0 Considerations—Mitigating Factors

Mitigating factors are any considerations or factors that may justify in a reduction in the degree of discipline to be imposed.[20] The Hearing Board finds that Respondent demonstrated a cooperative attitude in the formal proceedings with the People and the Hearing Board consistent with ABA *Standard* 9.32(e).

### Analysis Under ABA Standards and Colorado Case Law

The Hearing Board considers the following standard the most appropriate given our finding that Respondent violated a court order not to practice law while under suspension, which we consider the gravamen of his misconduct.[21]

ABA *Standard* 8.1(a) provides:

---

**20.** *See* ABA *Standard* 9.31.

**21.** The appendix to the ABA *Standards* states that the appropriate standard for Rule 3.4(c) and

Disbarment is generally appropriate when a lawyer ... intentionally or knowingly violates the terms of a prior disciplinary order and such violation cause injury or potential injury to a client, the public, the legal system, or the profession....

ABA *Standard* 8.1(b) provides:

Disbarment is generally appropriate when a lawyer ... has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system or the profession.

ABA *Standard* 8.1 and Colorado case law presume the most severe sanction of disbarment when a lawyer violates a court order to not practice law while under suspension.[22] Upon consideration of the duties violated, the established mental state, the injury caused, the minimal evidence of mitigation and the substantial evidence of aggravation, especially Respondent's continued pattern of practicing law while under a court order of suspension, the Hearing Board finds that the presumptive sanction of disbarment is most appropriate.

## VI. *CONCLUSION*

Within the last ten years, Respondent has engaged in serious misconduct including expending client funds without earning them, deceiving or attempting to deceive the court, making an entry of appearance in municipal court while suspended from the practice of law, assisting non-lawyers in the unauthorized practice of law, and practicing law while under an order of suspension; all of which occurred before he appeared before this Hearing Board. Any further effort to reha-

bilitate Respondent given his prior disciplinary history and defiance of court orders, would only endanger the public and diminish the integrity of the of the disciplinary system.

In spite of the numerous opportunities given to Respondent to avoid the unauthorized practice of law, Respondent continued to counsel, assist, and advise others, as well as file legal documents on their behalf while under an order of suspension. The Hearing Board therefore concludes that disbarment is the appropriate sanction in this case.

## VII. *ORDER*

The Hearing Board therefore **ORDERS:**

1. **ROBERT JOHN MASON**, Attorney Registration No. 04324, is hereby **DISBARRED** from the practice of law and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado. The disbarment **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.

---

Rule 5.5(a) violations are 6.2 and 7.0. However, the Hearing Board finds that ABA *Standard* 8.0 is the most applicable standard because its commentary states that it is usually applied when a lawyer practices law while under an order of suspension as found in this case. Nevertheless, applying ABA *Standard* 6.2 or 7.0, the Hearing

Board would reach the same conclusion of disbarment based on the extensive aggravation in this case.

22. *See People v. Redman*, 902 P.2d 839 (Colo. 1995); *People v. Zimmermann*, 960 P.2d 85 (Colo.1998).